On July 2, 1982, the court entered judgment in favor of the Salt River Pima-Maricopa Indian Community, et al., and against the defendant in Docket No. 291 in the amount of $13,000,000, post at 1057. Also, on July 2, 1982, a motion for determination of attorneys’ fees was filed by Philip J. Shea, attorney of record for plaintiffs on behalf of his firm, Marks, Shea & Wilks, and on behalf of a former attorney of record, Z. Simpson Cox, and his firm, Cox & Cox. The motion asks the court to determine that the contingent fee agreements under which legal services were performed for plaintiffs are fair and reasonable. Plaintiffs and defendant have been notified and express no objection to allowance of the maximum 10-percent contingent fee allowed by law. The contracts with plaintiffs, upon which the claimed fees are based, were approved by authorized representatives of the Bureau of Indian Affairs, United States Department of the Interior, on behalf of the Secretary. Under these contracts, Marks, Shea & Wilks claim entitlement to compensation in an amount equal to 7-% percent of the judgment, or $975,000. Cox & Cox claims 2-% percent of the judgment, or $325,000.
The contract between plaintiffs and Marks, Shea & Wilks is dated July 18,1977, and was approved on August 5,1977. It is designated by the symbol H50C1420. The original contract with plaintiffs, however, was dated January 19, 1949, approved on September 13, 1949, symbol I-I-IND-42193. The attorneys who were the original parties to this contract, C.M. Wright and James E. Curry, are both deceased. The pending motion states that by an amendment in July 1971 to this 1949 contract, Z. Simpson Cox became a *1034 participating contract attorney. The pending motion alleges that by an agreement between plaintiffs and the surviving attorneys to the original contract, all obligations of the plaintiffs for services performed before July 18,1977, are to be satisfied by the payment of 2-% percent of the judgment to Cox & Cox.
A second motion was filed on September 7, 1982, by Landon Gerald Dowdey, who seeks to intervene on behalf of the estate of James E. Curry, deceased, original legal counsel to the Indians herein. The motion for intervention asks that the court "deny the motion of Shea et al. for an award of attorneys’ fees on behalf of himself and others to the extent that the total of such awards exceeds 7.5% of the total recovery herein” and asks for an award of 2.5 percent additional for the estate of James E. Curry.
The intervenor represents that Mr. Curry did extensive work on the case pursuant to the original 10-year contract, No. I-I-IND-42193, entered into with the Indians, dated January 19, 1949, and approved September 13, 1949, and that the intervenor’s claim is supported by extensive documentation. The intervenor further represents that prior to the 1949 contract Mr. Curry made an extensive investigation in preparation for the filing of the petition by him in this case in 1951. It is admitted that Mr. Curry did no work on the case after about 1955 when he was stricken with a serious illness. He died in 1972.
An affidavit of Philip J. Shea represents that all work done on this case for plaintiffs was done after defendant filed its accounting in 1971, except for the preparation of the petition in 1951, and the affiant represents that the late C.M. Wright prepared the petition and that Samuel P. Goddard, Jr., his former partner, has a release of all claims from the widow and heir of C.M. Wright and that Goddard has released any fee claims of his own.
It is not possible to resolve the disputed factual allegations of the intervenor and counsel of record on the pending motions as to entitlement to the disputed 2.5 percent of the requested fee. This is a conflict between private parties which the court cannot, of course, decide. Absent a stipulation for apportionment of contested fees the court has not exercised jurisdiction in these matters. Sisseton & Wahpe *1035 ton Bands v. United States, 191 Ct. Cl. 459, 423 F.2d 1386 (1970). The Indian Claims Commission was held to be the proper forum for resolution of such disputes. Since the Commission was abolished and its authority was transferred by Congress to this court, it could be argued that the changed legal situation might now make it possible for us to resolve such a dispute. The question is not without doubt, however, and it is not briefed for us. In any event, assuming without deciding that we could take evidence in the matter and decide it, such action is not possible because this court goes out of existence at the end of this month. The dispute will have to be resolved by such other court as may be shown to have jurisdiction of a contract dispute between the parties.
What we decide here is that a 10-percent fee for the legal services provided to plaintiffs is fair and reasonable. The court has before it affidavits and a detailed historical statement of much of the work performed leading up to the judgment in plaintiffs’ favor. It is unnecessary here for us to restate this in any detail. We are impressed by the papers before us which demonstrate the long time and the professional skill that final resolution of the case necessitated. This is one of those cases which continued for decades and required almost unbelievable efforts at discovery, accounting, ascertainment of water and property rights, valuation, negotiation, and litigation.
The court has been called upon to award attorneys’ fees in numerous cases in which it has entered judgments for Indians. In its opinion in Western Shoshone v. United States, 228 Ct. Cl. 26, 652 F.2d 41 (1981), the court reviewed some of these precedents and articulated 13 factors by which to test the reasonableness of claimed fees. Against those guidelines we have measured the present request for the maximum 10 percent allowed by statute and concluded that 10 percent of the judgment for the services of counsel in this case is entirely fair and reasonable.
it is therefore ordered, without oral argument, that the motion of July 2, 1982, is allowed, but only to the extent that the court approves the award now of 7.5 percent in attorneys’ fees to the counsel of record and all contract attorneys having an interest in the fee, other than the *1036 claim asserted by the estate of James E. Curry, the same to be paid from the court’s judgment for plaintiffs entered July 2, 1982, in Docket No. 291. The claim of counsel for post-judgment interest on attorneys’ fees is mooted by waiver of counsel.
it is further ordered that the motion to intervene is allowed, but the court declines to allocate an additional 2.5 percent fee between the counsel and the estate of James E. Curry. Such additional 2.5 percent is fair and reasonable but identification of those entitled to it must await further proceedings.